MAHAN *vs.* CAVENDER *et al.*

1. The act of October 16, 1885 (Acts 1884–5, p. 98), regulating the practice in cases referred to masters in chancery or auditors, and as to exceptions filed to their reports, is not in conflict with the section of the constitution which provides that the right of trial by jury shall remain inviolate.

(*a.*) The interposition of juries in the trial of chancery cases is purely a matter of legislative regulation, and originated in this state in the judiciary act of 1799. It is not a constitutional right or one guaranteed by *Magna Charta*.

2. There were no exceptions of fact in this case, but all the exceptions went to the conclusions of the master in chancery, drawn from the facts reported, and the result reached was sustained by the law applicable to the facts in evidence.

(*a.*) One creditor of a common debtor, who delayed in collecting his debt, waited until another creditor had foreclosed a mortgage against the debtor, and then sought to assist the debtor in obtaining an extension of time by paying a part of the mortgage debt, could not set aside the judgment against the debtor, except for fraud affecting his rights, without negligence on her part; and the allegation that there was usury in the original mortgage debt was not alone sufficient to establish fraud which would avoid the judgment.

(*b.*) No other conclusion could have been reached in this case than that reported by the master and approved by the court.

JACKSON, C. J., dissented as to the construction to be given to the act of 1885, considered in the light of the constitution.

December 7, 1886.

Practice in Superior Court. Masters. Auditors. Debtor and Creditor. Judgments. Constitutional Law. Jury

and Jurors.    Before Judge FAIN.    Gordon Superior Court.
February Term, 1886.

Reported in the decision.

J. A. BAKER, for plaintiff in error.

RANKIN & MILNER; J. M. NEEL, for defendants.

HALL, Justice.

This case was heard and disposed of upon exceptions
taken to the report of the master in chancery, made up
and returned in pursuance of the act of the general assembly, approved October 16, 1885, entitled " An act to define
the duties of masters in chancery and auditors; to regulate the filing of exceptions to their reports, and define the
duties of the judges of the superior courts in the premises,"
etc. (Acts, 1884–5, p. 98).    The act, so far as it is material
to consider it in this case, consists of a single section, and
provides, 1st, that the master shall report the evidence heard
by him, the facts found by him, his rulings on all questions of law, and a general summary of his findings.    2nd.
It regulates the filing of exceptions and describes what
they must contain, viz., that they shall " plainly and distinctly state the finding or decision complained of and the
error committed."    3rd.    When this is done, it becomes the
duty of the judge " to carefully and attentively examine
the report " (and necessarily, as we take it, the exceptions
made and the specification of errors contained in such exceptions), " and if it does not appear that error has been
committed, he shall approve the report and dismiss the
exceptions," and thereupon a verdict is to be taken in
accordance with the master's findings; but, 4thly, if he
shall find that error has been committed, then the exception specifying such error is to be approved, and the
issue made by the finding and the exception is to be submitted to the jury, and on the trial of that issue, only so
much of the evidence reported as is pertinent to this issue

or trial shall be read.  5thly.  If there be such newly dis-
covered evidence as would, with that already adduced,
properly supported by affidavits, authorize the grant of a
new trial, then that may be presented to the jury either
orally or by affidavits; or, lastly, if the master has admitted
illegal or rejected competent testimony, and if the testi-
mony thus rejected or improperly admitted could or would
have affected the result, then the exception upon either
ground is to be sustained and the trial of the issue is to
proceed by giving to the jury the evidence improperly
repelled, and by excluding the evidence illegally admitted.
This, except the section repealing conflicting laws, is the
entire act.

1.  Notwithstanding the rules of extreme caution, which
all courts feel bound to observe in dealing with constitu-
tional questions, such as the impropriety of entertaining
them at all, when the case can be disposed of on other
grounds, and the further consideration that an act is never
to be declared unconstitutional when there is doubt as to
the authority assuming the exercise of the power on ac-
count of the comity due from one department of the gov-
ernment to its co-ordinates, to say nothing of the absolute
prohibition imposed by the fundamental law upon each
department of government to abstain from invading the
province of the others, we are met *in limine* with the
somewhat startling proposition, confidently and boldly
asserted and persistently rather than plausibly maintained,
that this act is directly opposed to that provision of our
state constitution (Code, §5174) which declares that "the
right of trial by jury shall remain inviolate."  The words
of the act, without more, it seems to us, afford an all-suf-
ficient and conclusive answer to the position.  Provision
is made by it for submitting to the jury every conceivable
issue made by exceptions to the master's report involving
disputed questions of fact.  Long before the adoption of
the constitution of 1877, final decrees were rendered by
the presiding judge without a jury, where there were no

disputed facts, and upon reports of masters and auditors finding the facts in dispute to which no exceptions had been filed (Code, §4206), but no one has ever intimated, so far as we are aware, that the practice here sanctioned deprived a party of the right to have his case passed upon by the judgment of his peers. And if this may be done, why may it not be authorized in a case where the exceptions filed make no issue of fact proper to be submitted to a jury? This act, however, as we have seen, does not go to that extent, for the judge, even in a case where he disapproves the exceptions and dismisses them, is not permitted to make the decree, but this is to be done upon the verdict of the jury. This clearly expressed and accurately framed act had for its object the speedy termination of litigation, a purpose of the highest concern and most vital interest to every well regulated government, and which should not be thwarted or impeded in its fulfillment by suggestions or arguments of doubtful conclusiveness as to constitutional difficulties or impediments in the way of its accomplishment. Moreover, we are of opinion that the right of trial by jury, as guaranteed by our constitution, has reference to the right as embodied in *Magna Charta*, and which, along with many other valuable rights, we inherited from our English ancestors; and that it was never designed to trammel the legislature in regulating the practice of the courts and in prescribing the terms and conditions upon which cases might be passed upon by the jury.

The interposition of juries in the trial of chancery cases is purely a matter of legislative regulation, and originated, so far as respects such trials in this state, in the judiciary act of 1799, and has since been adhered to with various modifications made from time to time by the general assembly. Certain it is that no such right existed in England, either before or after *Magna Charta*, and that it never has and does not now exist in many of our sister states having the same constitutional provision as ours.

It is insisted that both exceptions of law and exceptions

of fact have been filed to the master's report, but we cannot find that this has been done. All the exceptions go to the conclusions drawn by the master from the facts that appeared before him, and which he fully reported to the court. There is no complaint that he failed to return any of them as they appeared in evidence, or that he improperly received testimony, or rejected any that he should have received; neither is there any suggestion of any newly discovered evidence which would be likely to affect or change the result. The sole question, therefore, is, whether the result reached under the proof was sustained by the law applicable to the facts in evidence? If this is affirmatively answered, then, under our view of the case, there was no error in any direction given or in the final decree made by the court.

The complainant, Mahan, and the defendant, Cavender, were the creditors of one Patton. Cavender seems to have been the more vigilant, or, perhaps, the less indulgent, creditor of the two, both in securing a mortgage for his debt and in reducing it to judgment by a foreclosure of his mortgage, as well as in enforcing the execution issuing upon his judgment of foreclosure. Mahan, instead of urging the collection of his debt, seems to have felt great sympathy for Patton, and when his property was finally levied on and about to be brought to sale, he assisted him in endeavoring to pay a part of his debt, and thus to postpone the final execution of the judgment Cavender held against him. When these efforts failed, Mahan filed this bill to arrest the execution of the judgment, alleging that there was usury in the debt; that the mortgage taken upon Patton's property was for an amount largely in excess of what Cavender claimed to be due him; that the arrangement was collusive, and made with a view to keep Patton's other creditors from interfering with him, and to hinder and delay them, and thus, in the end, to defraud them, and on these grounds he prayed to set aside Cavender's judgment, or at least to postpone its payment in favor of liens of younger

date. Cavender answered, pointedly denying each and all of these several allegations, except those as to the usury reserved and carried into the debt, and to this he pleaded his judgment on the foreclosure of the mortgage in bar of complainant's right to open the judgment. He also set up the further fact that complainant, with a full knowledge of the dealings between him and their common debtor, waived any right by his subsequent acts and conduct to intervene for the purpose of interfering with or disturbing his judg-, ment. This entire defence, we conclude, after a careful examination of the record, was sustained by the evidence. There was no ground left for interference, except perhaps the existence of the excess beyond principal and lawful interest in Cavender's judgment. This circumstance had no tendency whatever, separated from other charges in the bill, none of which were proved, to establish any fraud in the dealings between defendant, Cavender and Patton, and complainant, on the case made, had no right to avoid this judgment, except for fraud (Code, §§3595, 3594, 3596, and other cognate sections, especially §§3129, 3178, and citations under each); and in order to do this, he must have been vigilant in detecting and exposing the fraud. He must not have been negligent. Any mixture of negligence on his part, unless brought about by the misconduct of the opposite party, would defeat his right. There could have been no other result than that reached by the master and approved by the court, under any view of the law that occurs to us, or to which our attention has been called, regulating the rights of the respective parties, and so we must order the

Judgment affirmed.

JACKSON, C. J., concurred in the judgment, but not in the construction of the act of 1885, considered in the light of the constitution. He thought that the presiding judge, should look at the reported evidence and see if the evidence was one way. If so, he could rule upon it in the

absence of other proof, as there would be no issue. But where the evidence is conflicting on any given point, and there is an exception on that point, the issue should be left to the jury.

BLANDFORD, J., concurred. He thought that the right to have a jury trial 'in equity causes was a statutory right, and not one arising at common law or under *Magna Charta;* and that the object of the legislature was to abbreviate the submission to a jury of questions arising in the class of cases to which the act referred.