## HEARN v. LAIRD.

1. An auditor's finding of a certain item of expenditure in favor of the defendant is not contrary to law simply because this item is not claimed in defendant's answer, when it appears that the expenditure was made after the answer was filed, and the defendant, in an amendment thereto, asks that whatever amount is due him by the plaintiff be ascertained and fixed by a decree of court.
2. In an equitable action where exceptions of fact are filed to an auditor's report, and it appears that the testimony before him was amply sufficient to sustain his conclusions, this court will not interfere with the judgment of the court below in overruling the exceptions, although there may be some conflict in the evidence; nor in such a case was there any error in affirming so much of the auditor's report as directed a division of the costs between the parties.

Argued December 13, 1897.—Decided January 19, 1898.

Exceptions to auditor's report. Before Judge Lumpkin. Fulton superior court. March term, 1897.

On May 31, 1894, Miss Hearn bought at receiver's sale five city lots, upon each of which the erection of a house had been begun but had not been completed. The purchase-price was $1,112, payable one third cash, one third on May 31, 1895, and one third on May 31, 1896. She entered into a contract with Hilley & Murdock, whereby they were to complete the erection of the buildings and furnish material therefor, according to the original plans, for $1,850. She also entered into a contract with L. J. Laird, under which he made the first payment on the purchase and assumed responsibility for the deferred payments, and took her place in the contract with Hilley & Murdock; and she executed and delivered to him a deed to each of the lots. This contract was dated December 3, 1894, and was as follows: "This is to certify that, in consideration of the fact that Miss Hearn bid off the five lots of the Brown property

with improvements [described], I, L. J. Laird, agree to make the first payment on said property, and in addition to this, hereby agree to let the said Miss Hearn have lot 16 in block B [one of the lots above referred to], with present improvements at cost.   In case the buildings of lot 16 herein described are completed, the said Hearn is to be charged the cost of said improvements only, with 8 per cent. interest per annum.   In addition to this the said Laird further agrees to allow the said Hearn one third of the profit which may be made upon the other four houses and lots.   The said Hearn hereby agrees to pay the said Laird interest at the rate of eight per cent. upon one third of the moneys advanced by him in the purchase and improvement of this property.   In consideration of the fact that the said Laird has this day closed a contract with Messrs. Hilley & Murdock to complete the whole five buildings upon said five lots at $1,850, with the understanding that B. L. Hearn, agent for Miss Hearn, is to give this work his personal attention, and no bills are to be paid by the said Laird unless properly O. K.'d by the said Mr. B. L. Hearn."   Subsequently, without fault on the part of Laird, Hilley & Murdock quit the buildings while they were still unfinished, and Laird completed them.   In the meantime B. L. Hearn, who had been superintending the construction of the buildings, was discharged by the defendant for a sufficient cause.   After the completion of the buildings Miss Hearn filed her petition against Laird, in which she alleged, among other things, that he refused to come to a settlement with her in accordance with his contract with her; that he claimed to have expended in improvements $650 in excess of $1,850, the contract price, for which sum she claimed she should not be held accountable; that the same was for unnecessary changes in the buildings and in the plan of the buildings, and was not fair and reasonable in amount. She offered to pay defendant the purchase-price, with eight per cent. interest thereon, for lot 16, and for all the improvements placed thereon in accordance with the original plan of the house and the Hilley & Murdock contract, and for any changes that may have been made at her instance, where the bills were approved by her agent B. L. Hearn, or where a fair and rea-

sonable price was charged for material or for work, provided the property was benefited to the amount of the expenditures, and if not, then pro tanto; and she prayed, among other things, that said lot and the improvements thereon be decreed to be her property, charged with her just indebtedness to the defendant; or else that the entire property be partitioned under direction of the court, and an equitable and just division be had, her interest or part therein remaining charged with her just indebtedness to the defendant; also for general relief.

The defendant filed an answer, in which he claimed that the expenditures and charges made by him were reasonable and necessary, and denied that he had refused to settle with the plaintiff in accordance with the contract. In paragraphs 10 and 11 of the answer he alleged that, because of the interference of B. L. Hearn, the plaintiff's agent, certain changes in the plans and specifications of the work were made in defendant's absence, and without his consent, which changes added to the cost as follows: $115 for changing verandas; $30 for changing three chimneys; $50 for work in raising house on lot number 16; $42 for seven extra windows. In addition to this the defendant built fences around the property at a cost of $195, and had wells dug and covered for the use of the houses at a cost of $75, and privies built for each house at a cost of $35, which improvements were not included in the contract, but were necessary. He averred that he was ready to fully comply with the terms of his contract with the plaintiff, and make a deed to her to lot 16, upon payment of the purchase-money on the lot, and all money expended for the improvements thereon, together with eight per cent. per annum interest; and prayed that the amount due him by the plaintiff be ascertained and fixed by a decree of the court.

The issues of law and fact involved were, on June 5, 1896, by an order of the court, referred to an auditor, who filed a report in which (after finding against various contentions of the plaintiff as to which there is no exception) he found as follows: (Paragraph 15) Defendant expended on the improvements on the five lots $3,100.46, but defendant claims only $542 in the several items in paragraphs 10 and 11 of his answer, over and

above the Hilley & Murdock contract price of $1,850, which, with said $1,850, makes $2,392; to which is added $262.70 expended by him in completing the house on lot number 16, after his answer was filed, making in all $2,654.70; which is all of said $3,100.46 that can be allowed defendant, under the pleadings and proof, for expenditures in improving the five lots. (Paragraph 16) The house on lot 16 was larger than the other four houses, and cost one third more. Therefore, of said $2,654.70, said house should be charged with $663.67, and the other four houses with the balance, $1,991.03; which is $497-.75 each. (Paragraph 19) Both parties having asked relief in this proceeding, the cost should be divided between them equally, and the property charged therewith.

To the report of the master the plaintiff filed exceptions as follows: (1) The master erred in law in allowing the defendant $262.70 more than he claimed in his answer, as stated in paragraph 15 of the report. (2) Plaintiff excepts to paragraph 15 of the report in allowing defendant $542, claimed in paragraphs 10 and 11 of the answer. (a) Parts of said amounts are for unnecessary and useless changes in the buildings and in the plan of the buildings, and contrary to the contract between plaintiff and defendant as follows: The defendant tore the verandas down twice, and built them the third time, changing the plan of them from hip wooden roof to flat tin roofs, for which he asks that he be paid $115 extra; and he asks that he be paid $30 for changing chimneys, and $50 for raising house known as No. 16, which amounts are not just and not sustained by the evidence. (b) The remainder of the charges in said paragraphs 10 and 11 of defendant's answer, to wit, $42 for extra windows, $195 for fences, $75 for wells, and $35 for privies, are excessive in price, as shown by the evidence, as follows: Plaintiff admits that the said windows, fences, wells and privies were for the improvement of the property, but they should not cost over $36 for windows, $105 for fences, $50 for wells, and $30 for privies. (3) Plaintiff excepts to paragraph 16 of the report, in that it allows one third more for cost of house known as 16, which is excessive, it being about one foot wider than the other houses, according to the evidence.

(4) Plaintiff being forcibly put out and kept out of possession and use of her interest in the property, and having no other redress than an application to the courts for relief, she excepts to paragraph 19 of the report, in that it charges her with half the cost; and she asks that defendant be charged with all the costs of the trial.

The court overruled the exceptions, confirmed the auditor's report, and directed that a decree be prepared in accordance therewith. Plaintiff excepted.

*Maddox & Terrell*, for plaintiff.
*James K. Hines* and *M. A. Hale*, for defendant.

LEWIS, J. The official report states the facts.

1. The case made by the pleadings involves rather complicated matters of account between the parties, and it was referred to an auditor, who made his report of the testimony introduced before him, and his conclusions or findings of fact. One ground of exception filed by the plaintiff to the report is, that it allowed defendant $262.70 more than he claimed in his answer. It appears that this item of expenditure was incurred by the defendant after he had filed his original answer, and that the defendant filed an amendment to his answer claiming generally an indebtedness to him by the plaintiff, and asking that the amount due him be determined and fixed by the court. Simply because the above item was not specifically set forth in the answer does not render a finding thereof in favor of the defendant erroneous; especially as it does not appear that the plaintiff excepted to the admission of testimony by the auditor on this point.

2. Plaintiff's counsel contended in the argument that, under the written contract between the parties, all that was chargeable against her for building purposes was the sum stipulated in the contract. This position is at singular variance with what the plaintiff contends for and concedes in her petition; for she offers to pay the defendant, not only for the improvements on the premises in accordance with the original plan of the house and the Hilley & Murdock contract, but also for other expenditures, where a fair and reasonable price has

been charged for material and for work, provided the same has benefited the property to the amount of the expenditures, and if not, then pro tanto. But besides this, the agreement relied on by the plaintiff only specifies a contract made with Hilley & Murdock to complete the buildings at $1,850. It seems that Hilley & Murdock abandoned this contract without any fault of the defendant; and it was no violation of either the letter or spirit of the contract that plaintiff should account to the defendant for all improvements of value and necessity he had placed upon the lot she claimed, even though they should have amounted to more than the sum contemplated by the Hilley & Murdock contract.

The exceptions filed to the auditor's report were mainly those of fact. This was an equitable action. Upon an examination of the record we are satisfied that the findings of the auditor were fully supported by the testimony introduced before him. Indeed, the weight of the evidence seems to sustain his conclusions. But an important question in this case is, whether or not, in an equitable cause where there is any conflict in the evidence, the judge has, under the law, the power to overrule the exceptions, and thus exclude from the jury the issues of fact raised. It is a well-established principle in this State that in a case at common law, where a party excepts to an auditor's report on the ground that his finding is contrary to the evidence, he has the constitutional right to have all questions of fact passed upon by a jury, and a legislative denial of that right is unconstitutional. It is equally well established that in equity causes the right of a trial by jury is not constitutional, but statutory; and a legislative restriction thereof, in cases of auditor's reports, would be constitutional. *Mahan* v. *Cavender*, 77 *Ga.* 118; *Poullain* v. *Brown*, 80 *Ga.* 27; *Mackenzie* v. *Flannery*, 90 *Ga.* 590 (1); *Central Trust Co.* v. *Thurman*, 94 *Ga.* 736 (6), 750. These decisions were based upon the act of 1885, in which the legislative intent was clearly manifest as to the powers intended to be conferred on the judge in such cases. That act declares: "It shall be the duty of the judge of the superior court to carefully and attentively examine the report of the master in chancery, or auditor; and if it does not ap-

pear that error has been committed, he shall approve the report and dismiss the exceptions, and a verdict shall be taken in accordance with the findings of the master in chancery, or auditor." Not only was the power given the judge, but it was imperative on him to overrule any exceptions, whether of law or fact, unless it was made to appear that the auditor had erred in his findings. The decisions above cited ruled that this act was unconstitutional as to common-law cases, but its constitutionality was upheld as to proceedings in equity. But the auditor's act of 1894, as amended by the act of 1895, was in force when the case we are now considering was referred to and passed upon by the auditor. The terms of that statute create some doubt as to what powers it intended to confer on the judge in passing upon exceptions of fact to an auditor's report in an equity cause. That act is embodied in the Civil Code in sections 4581 to 4603, inclusive. Section 4595 declares: "In all law cases where an auditor is appointed, exceptions of fact to his report shall be passed upon by the jury as in other issues of fact, and in equity cases by the jury when approved by the judge." Section 4596 declares: "In equitable proceedings where an auditor has been appointed by the superior court, if the judge approve any exception of fact, the same shall be submitted to the jury as in other cases, with the same presumptions, burdens, and right to open and conclude." Section 4600 provides: "Where exceptions of fact have been filed to the report of an auditor, the judge shall cause the issue thus made to be submitted to the jury, in which trial only so much of the evidence reported as is material and pertinent to the issue then on trial shall be read to the jury." Section 4601 provides: "If exceptions are filed, after the same have been considered and passed upon by the court or jury, or both, as the case may be, the court shall order a verdict or a decree in accordance with the report, and the changes made by court or jury, unless the same shall require a recommitment."

Construing all the above provisions of the statute together, there is clearly a distinction drawn between the powers and duties of the judge in cases at law and in those in equity. In the former no discretion is given him; he is obliged to submit

all questions of fact to the jury. In the latter he must in some way pass upon such exceptions before they can reach the jury. But what is the extent of his power? Does the statute require of him the meaningless act of allowing all exceptions of fact in equity proceedings as a matter of course, and without any examination into their merits? Or, does it require an investigation, and if he discovers any conflict in the evidence, however slight, he shall approve the exceptions and submit the issue to the jury? If the judge be powerless to disallow the exceptions unless the evidence demands the conclusions reached by the auditor, then there is practically no difference in this respect between common-law cases and cases in equity. For in any case where the evidence demands a certain verdict, the judge can instruct the jury to so find. We therefore conclude that the statute confers upon him something more than the granting of a mere perfunctory order allowing all exceptions of fact when there is any testimony whatever upon which they can be based. On the other hand, we are not prepared to go to the extent of saying that it is the duty of the judge to overrule such exceptions unless it is made to appear to him that the auditor has erred. The act of 1894 places no such imperative obligation on him. It seems to leave much to his sound discretion in the matter. If, upon examination of the auditor's report of the testimony, he discovers such conflict in the testimony that in his judgment the issue should be submitted to a jury, such discretion, unless abused, would not be interfered with by a court of errors. A decision allowing exceptions and submitting issues of fact to a jury might properly be reached, though the judge might not be prepared to say that the auditor erred, and though he had reached no definite conclusion on the subject himself. On the other hand, where there is sufficient evidence to support the auditor's rulings, and no error of law has been committed, this court will not reverse the judgment of the court below dismissing the exceptions and confirming the auditor's report.

Under § 4850, Civil Code, there was no abuse of discretion in directing a division of the costs between plaintiff and defendant.

Applying the above principles to the facts in this case, we conclude that there was no error in the decision of the court complained of in the bill of exceptions; and the judgment is accordingly　　　　*Affirmed.　All the Justices concurring.*