## LAMAR *et al., v.* ALLEN *et al.*

1. The finding of an auditor on an issue of fact when the evidence is conflicting, which has been approved by the judge of the superior court, will not be disturbed by this court.
2. The present case was one peculiarly appropriate for reference to an auditor, and it was therefore not error to appoint an auditor therein, notwithstanding some of the parties objected to such reference.
3. Relationship can not be proved by general repute in the community.
4. There is in this State no constitutional right to a trial by jury in an equity case.
5. Under the provisions of the present code of this State, a party is not entitled to have exceptions of fact to an auditor's report in an equity case passed upon by a jury, unless the judge approves such exceptions.
6. There was no error committed by the judge in refusing to approve the exceptions of fact which were filed to the auditor's report; nor were his rulings on the exceptions of law which we have found it necessary to review in any way erroneous.

Argued June 1, — Decided July 20, 1899.

Exceptions to auditor's report. Before Judge Callaway. Richmond superior court. October term, 1898.

*Russell & Rosenfield*, for plaintiffs.

*William H. Barrett, F. H. Miller Jr., C. A. Picquet, J. J. Foster, W. K. Miller, E. B. Baxter, Lyons & Porter, Hamilton Phinizy, John M. Walton,* and *Henry C. Hammond,* for defendants.

COBB, J.    Richard Lamar, a negro, died testate on March 26, 1885.    His will, which was executed May 24, 1879, was duly proved and admitted to record, and contained the following item: "I devise and bequeath to my daughter, Malinda Blair, my two adjoining lots of land on Centre and Walker streets in the city of Augusta, known on William Phillips's new map of said city by the letters 'A' and 'B,' for her sole and separate use during her natural life, and at her death for the use of my son, Daniel Lamar, during his life, and at his death to his children if he has any and they survive him, per stirpes, but if he should die without issue, then for the use of my brother and sister and their heirs forever." Malinda Blair died, and Daniel Lamar took possession of the property and lived upon the same until January 8, 1897, when he died without issue.   On September 25, 1897, Richard Lamar and others filed a suit to recover one-half interest in the property described in the item of the will above quoted, setting up that they were the descendants of Pompey Lamar, who was the brother of the testator, referred to in the will.   John Harper and others became parties to the proceeding, and set up that they were the children of Daniel Harper, who was the brother referred to in the will of Richard Lamar.   Judy Few also became a party to the case, asserting that a negro named "Jim" was the only brother Richard Lamar ever had; that Jim died without descendants, and that her father, whose name was Charles, was the brother of the mother of Richard, the testator; and that therefore she is entitled to the one-half of the estate which would have gone to the descendants of Jim, the brother, if he had died leaving issue.   John M. Allen, as administrator de bonis non with the will annexed of Isabella Maxwell, was also a party to the case.   The parties to the case were twenty-one negroes and John M. Allen, administrator of Isabella Maxwell.   The case was referred to Irvin Alexander Esq. as auditor.   It was admitted that Isabella Maxwell was the sister

referred to in the will. The auditor found that Daniel Harper was the brother referred to in the will, and that therefore his descendants were entitled to take the one-half interest in the property. To the report of the auditor the plaintiffs in the original petition filed exceptions both of law and fact. Such questions of law as are raised by these exceptions will be referred to hereafter. The court disallowed all of the exceptions of fact, overruled the exceptions of law, and directed a verdict in accordance with the report of the auditor; and the plaintiffs excepted.

1. The evidence shows clearly that Richard Lamar had no brother in life at his death nor at the time the will was made. The case was disposed of on the theory that the word "brother" in his will would include the descendants of a brother who was dead when the will was made; and no question was raised in this court, nor does it seem that any question was raised at any stage of the litigation, as to whether this was the proper construction to be placed upon the will. We do not mean by this reference to the matter to intimate that such a construction of the will would be erroneous, but call attention to this fact that nothing here said may be construed to be a ruling by this court on this question either one way or the other. The investigation before the auditor was directed solely to the determination of who was the brother referred to in the will. The pleadings disclosed that there were three persons who were claimed to be the brother in question. One was Pompey, the ancestor of the plaintiffs in the original petition, who died a slave many years before the will was made, and who it was claimed was a full brother of Richard, the testator. Another was Daniel Harper, the ancestor of those in whose favor the auditor found, who was the half-brother of the testator; and the other was the negro Jim, who was alleged to have died without issue. The brief of evidence in the record discloses a mass of testimony which was introduced before the auditor to determine this puzzling question as to who was the brother of this deceased negro. The investigation was evidently tedious and laborious, and must have occupied days in the hearing of testimony alone; and from this mass of conflicting testimony

delivered by witnesses, some of whom were ignorant, others possibly unreliable and willing to testify to any state of facts necessary to establish their contention, the auditor had to determine, so far as it was possible to do so, the truth about the matter under investigation. There is evidence in the record to support the finding of the auditor in favor of the descendants of Daniel Harper; but there is also evidence which would have authorized a finding that Daniel Harper was not the brother referred to in the will, but that that brother was Pompey, the ancestor of the original petitioners. We can not from this record determine what is the truth of this matter. The auditor had the witnesses before him, and there is evidence to authorize his finding. The judge of the superior court has not seen proper to overrule the auditor, and we decline to interfere.

2. The plaintiffs objected to the appointment of an auditor, and this is one of the errors assigned in the bill of exceptions. The code provides that the judge of the superior court, in equitable proceedings if the case shall require it, may refer any part of the facts to an auditor to investigate and report the result to the court. Civil Code, § 4581. The judge evidently was of opinion that the case required such reference, and that reference of all the facts to the auditor was proper. As a matter of fact, there was but one question to be determined, that is, who was the brother of Richard Lamar, and a reference of "any part of the facts" necessarily required a reference of the entire case. We can not say that the judge erred in concluding that the case was one for submission to an auditor. An examination of this record satisfies us that this was a case in which reference to an auditor was peculiarly appropriate. No jury could have dealt with the mass of conflicting testimony in as satisfactory a way as the same was dealt with by the intelligent and able auditor to whom the case was referred.

3. During the investigation before the auditor counsel for the plaintiffs asked a witness the following question: "What was the general reputation in Augusta as to the relationship between Dick Lamar and Pompey Lamar?" Objection was made to this question, on the ground that matters of pedigree

could not be proved by general reputation in the community. The auditor sustained the objection, and an exception to this ruling was overruled by the judge. Relationship may be proved by evidence of what is the general repute on the subject in the family. Civil Code, § 5177. But we know of no law which authorizes evidence of the general repute in the community where the person lives, or has lived, to establish his relationship to any person. See, in this connection, 1 Gr. Ev. § 103, and note.

4. It was insisted here that the plaintiffs had a constitutional right to have their exceptions of fact submitted to the determination of a jury. It was conceded by counsel that the case of *Hearn* v. *Laird*, 103 *Ga.* 271, was to the contrary, and permission was asked to review this decision, which we declined to give. The decision in that case was followed in the case of *Bemis* v. *Armour Packing Company*, 105 *Ga.* 293. Attention is called, in the opinion in the case last cited, to the fact that the decision in the case of *Mahan* v. *Cavender*, 77 *Ga.* 118, although by a majority of the court only, holding that the right to trial by jury in equity cases was statutory only, had stood for more than eleven years, and that the General Assembly had not in the meantime seen proper to give the right of trial by jury in such cases, the legislation on the subject being in the other direction; and also to the fact that the decision in the 77 *Ga.* had been followed and approved by a full bench in the case of *Hearn* v. *Laird*. While it does not appear in the case of *Bemis* v. *Armour Packing Company*, the fact is that in that case application to review the case of *Hearn* v. *Laird* was made upon identically the same grounds that the application to review that case was made in the present case, that is, that the ruling in *Mahan* v. *Cavender* was not supported by the earlier decisions of this court; it being claimed that it appeared from some of them that the right of trial by jury in equity cases, although not a part of the law of England, existed in Georgia prior to and at the time of the adoption of the constitution of 1798, and that constitution provided that "trial by jury as heretofore used in this State shall remain inviolate;" and that therefore trial by jury in equity cases became in Georgia a constitutional

right.　See *Hargraves* v. *Lewis*, 7 *Ga.* 110, 126; *Mounce* v. *Byars*, 11 *Ga.* 180, 188; *Brown* v. *Burke*, 22 *Ga.* 574 (5). We, however, declined, in *Bemis* v. *Armour Packing Company*, to review the case of *Hearn* v. *Laird*, and reaffirmed by a unanimous bench the ruling made in that case.　The ruling in *Mahan* v. *Cavender*, supra, may have been erroneous, but we believe it was correctly decided.　In any event it has been a precedent for this court, and has been recognized as authority by the legislature in dealing with this question; and we decline to overrule the decisions following the same, and now say that this question must be considered as settled, so far as the decisions of this court are concerned, at least so long as it remains as at present constituted.

5. It is contended that even though the plaintiffs may not have had a constitutional right to have their exceptions passed upon by a jury, such right is given in section 4849 of the Civil Code.　That part of the section which is relied upon as giving this right became a part of the law of this State when the Code of 1863 was adopted, being incorporated in section 4116 of that code, and it appears in the present code in identically the same language, as follows: "When any question of fact is involved, the same shall be decided by a jury.　If there is no such question, or the auditor's report, unexcepted to, covers all such questions, the judge may render a decree without the verdict of a jury."　Section 4596 of the Civil Code, which is taken from an act passed in 1894 (Acts 1894, p. 125), provides that, "In equitable proceedings where an auditor has been appointed by the superior court, if the judge approve any exception of fact, the same shall be submitted to the jury as in other cases, with the same presumptions, burdens, and right to open and conclude."　There is a clear conflict between these two sections, and the latter must control, unless the adoption of the Code of 1895 with both sections contained therein would, as contended by counsel, require us to hold that the retention of the old law in the code manifests a clear intention on the part of the General Assembly to return to the old rule.　However, there is another section of the code which deals with this matter, and which must be considered before the question

now under consideration is decided. Section 4595 of the Civil Code, which is taken from an act passed in 1895 (Acts 1895, p. 48), declares that, "In all cases where an auditor is appointed, exceptions of fact to his report shall be passed upon by the jury as in other issues of fact, and in equity cases when approved by the judge. The report shall be taken as *prima facie* correct, and the burden be upon the party making the exceptions, who shall have the right to open and conclude the argument." This act and the act adopting the code (Acts 1895, p. 98) were approved on the same day. The act adopting the code provides that the "code of laws" prepared by the codifiers, "with the acts passed by the General Assembly of 1895 added thereto by the codifiers," shall be the "Code of Georgia." The act of 1895 above referred to thus became a part of the code, and if any confusion arose out of the incorporation into the code of the conflicting provisions of the old code and the act of 1894, it is entirely relieved by the act of 1895 and its incorporation into the code in the manner above referred to. That the General Assembly intended the rule prescribed in the act of 1895 to prevail can hardly admit of serious doubt. It is contended, however, that the rule contained in section 4849 should be declared to be in force, because the code was adopted as one act, and that it is a well-settled rule of construction that when there is a conflict between two parts of a single act, the latest in position will be declared to be the law, as from its position it is presumed to be the last expression of the legislative will. That such rule is well established can not be questioned. *Gilbert* v. *Railroad Company*, 104 *Ga.* 412; Ex parte Hewlett (Nev.), 40 Pac. 96; Ryan *v.* State, 5 Neb. 276; Quick *v.* Township, 7 Ind. 570; Albertson *v.* State (Neb.), 2 N. W. 742; Sutherland, Stat. Const. § 220; Bishop, Written Laws, § 65. The reason of this rule has been stated to be that, "in the reading of a bill, matter near the close may be presumed to receive the last consideration, and, if assented to, is a later conclusion." Sutherland, Stat. Const., supra. If such is the reason, the rule should not be applied in all its strictness when the provisions of a code of laws are under consideration, as such a body of laws is rarely, if ever, read in the General Assem-

bly.  A rule founded upon the same principle is applicable when there are two conflicting sections in a code, and that is, that section prevails which is derived from a source which can be considered as the last expression of the lawmaking power. Applying this rule, section 4596 would prevail over section 4849, and section 4595 would prevail over both.  See, in this connection, *Railway Company* v. *State*, 104 *Ga.* 831.

6. The auditor having found that the plaintiffs in the original petition were not the descendants of the brother referred to in the will of Richard Lamar, and that finding being affirmed, renders it unnecessary to decide other questions raised in the record, which it would have been necessary to decide in the event we had reached the conclusion that Pompey Lamar was the brother referred to in Richard's will.  We find no error in disallowing the exceptions of fact, nor was any error of law committed by the judge in any ruling which it has been necessary for us to investigate under the view we take of the case.  The exceptions of fact having been disallowed and the exceptions of law overruled, a decree should have been rendered without the intervention of a jury; but as the proper result was reached by directing a verdict and entering a decree thereon, this error in practice will not necessitate a reversal of the case.  See *Davidson* v. *Story*, 106 *Ga.* 799, and cases cited.

*Judgment affirmed.  All the Justices concurring.*