[Civ. No. 1940. First Appellate District.—December 9, 1916.]

## ARTURO WOLF et al., Respondents, v. CHARLES FUNKENSTEIN GALL et al., Appellants.

SUCCESSION—LEGITIMATED CHILDREN—ESTATE OF GRANDMOTHER.— Children born out of wedlock who have been legitimated by the subsequent marriage of their parents are entitled, by right of representation, to succeed to the interest of their deceased father in the estate of his mother.

ID.—CONSTRUCTION OF SECTION 1387, CIVIL CODE.—The provision of section 1387 of the Civil Code that an illegitimate child "does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral, unless, before his death, his parents shall have intermarried and his father, after such marriage, acknowledges him as his child, or adopts him into his family," recognizes by necessary implication the right of one whose parents intermarry and whose father, after such marriage, acknowledges him as his child or adopts him into his family, to represent his father or mother by inheriting from the kindred of either, either lineal or collateral, just as a legitimate child would inherit under section 1386 of the Civil Code; and the succeeding clause, commencing with the words, "in which case such child and all the legitimate children are considered brothers and sisters," etc., was manifestly intended not as a limitation on such right, but to remove all doubt as to the right of brothers and sisters to inherit from each other where one of them is legitimated as provided in the preceding part of the section, and to give the legitimated child a right of direct inheritance from brothers and sisters, in addition to the right of inheritance by representation conferred by the preceding clause.

ID.—LEGITIMATION OF CHILDREN BY SUBSEQUENT MARRIAGE OF PARENTS —SCOPE OF CODE PROVISION—ADULTS INCLUDED.—The provision of section 215 of the Civil Code that a child born out of wedlock becomes legitimate by the subsequent marriage of its parents is not confined to minors, but is applicable to those who have attained majority.

ID.—CHILD LEGITIMATED UNDER LAWS OF CALIFORNIA—NONRESIDENCE OF FATHER IMMATERIAL.—The status of children legitimated under the laws of this state is not affected by the fact that their father was an alien and domiciled outside of the state.

ID.—STATUS OF CLAIMANT TO SUCCESSION—DISREGARD OF EXTRA-TERRITORIAL LAWS.—While it is generally true that the laws of one state or country have no extraterritorial effect, on the other hand, when the status of a person is under consideration before the courts of this state in questions of succession, they will apply *our*

own statutes in determining the status of the claimant to the succession; and if the claimant shows that by applying our law he is entitled to take as a legitimate child, it is sufficient, and the fact that by the law of his own country he is not legitimate is immaterial.

ID.—LEGITIMATION OF CHILDREN—EFFECT OF STATUTES.—The right of inheritance of legitimate and illegitimate children alike is a creature of law, and can be changed by the legislature at any time and to any extent. When the law provides means for making legitimate a child born out of wedlock, it changes the status of that child, and, in the absence of special provision to the contrary, he thenceforth comes within the provisions of the laws relating to legitimate children. Thereafter a child so legitimated is included in the designation "child" or "children" when those words refer to a child or children legitimately born; and he is no longer included in the designation "illegitimate child" when that term is used in a statute, unless it is obvious that such words are intended by the legislature to include one who, though now legitimate, was formerly illegitimate.

ID.—MARRIAGE OF PERSON OF UNSOUND MIND—VALIDITY.—The marriage of a person of unsound mind is binding upon the parties and all the world until its annulment is declared, and is not subject to attack by a stranger in a collateral proceeding.

APPEAL from a portion of a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

J. R. Pringle, Edgar D. Peixotto, and Leon Samuels, for Appellants.

George Lezinsky, Alfred J. Harwood, J. C. B. Hebbard, and Theodore A. Bell, for Respondents.

KERRIGAN, J.—Arturo Wolf and Maria Julia Wolf, the respondents in this case, are the children born out of wedlock of Newman Wolf and Carmen Gonzales, and seek to have awarded to them a share in the property described in the complaint as heirs at law of Tobe Funkenstein, deceased, their grandmother, by right of representation of their deceased father, it being the claim of respondents that the subsequent marriage of their parents legitimated them by virtue of the provisions of section 215 of the Civil Code, and that their

adoption by their father into his family in connection with
such marriage also had for its effect their legitimation under
section 230 of the same code.   The court, among other things,
decreed that the respondents are heirs at law of said Tobe
Funkenstein, and entitled to succeed to a part of her estate,
and it is from this portion of the judgment that the defend-
ants have appealed.

The judgment is declared to be erroneous for various rea-
sons, among them being the alleged failure of the respondents
to prove that they were the children of Newman Wolf, that
the marriage ceremony between Wolf and their mother was
in fact a marriage; the contention that there was no acknowl-
edgment of respondents as his children by Newman Wolf, and
principally for the reason that even conceding the findings of
the trial court as to these matters to be correct, the respond-
ents are debarred by the provisions of section 1387 of the
Civil Code from inheriting any part of the estate of their
grandmother.

Notwithstanding the argument of the appellants to the con-
trary, we are satisfied, after a careful review of the record,
that the evidence sustains the view that Newman Wolf and
Carmen Gonzales were the parents of the respondents; that
they were duly married on July 21, 1913, both of the respond-
ents at that time having attained the age of majority; and
that if any acknowledgment of the respondent was required,
it was sufficiently established.

Equally without merit is the contention of the appellants
that the marriage of Newman Wolf and Carmen Gonzales
was a nullity, by reason of Wolf's mental condition at the
time of its celebration.   The evidence does not show him to
have been entirely without understanding.   A similar ques-
tion arose in the case of *Estate of Gregorson,* 160 Cal. 21,
[Ann. Cas. 1912D, 1124, L. R. A. 1916C, 697, 116 Pac. 60],
and it was there held that while subdivision 3 of section 82
of the Civil Code, declaring that a marriage may be annulled
if either party to it was of unsound mind at the time of enter-
ing into it, it was binding upon the parties and upon all the
world until such annulment was declared.

Nor do we think that the fact that Wolf was an alien and
domiciled outside of California renders ineffectual the acts
claimed to result in the legitimation of respondents.   While
it is generally true that the laws of one state or country have

no extraterritorial effect, on the other hand, when the status of a person is under consideration before the courts of this state in questions of succession, they will apply our own statutes in determining the status of the claimant to the succession; and if the claimant shows that by applying our law he is entitled to take as a legitimate child, it is sufficient, and the fact that by the law of his own country he is not legitimate is immaterial. In the case of *Blythe* v. *Ayres*, 96 Cal. 532, 564, [19 L. R. A. 40, 31 Pac. 915], the plaintiff was an illegitimate alien and at all times domiciled beyond the jurisdiction of California, and claimed to succeed to the estate of her intestate father by reason of having become legitimated by acknowledgment on his part in accordance with the provisions of section 230 of the Civil Code. In upholding her claim the court said: "Our statute, conjoined with principles of international law, would have changed her bastardy to legitimacy in the world at large; and regardless of international law, and regardless of all law of foreign countries, our statute law alone would have made her legitimate in the world at large *whenever and however that question should present itself in the courts of California.*"

This brings us to the principal contention of the appellants in the case and the one argued at length by them, viz., that in any event the respondents, being born out of lawful wedlock, are not capable of inheriting any part of their grandmother's estate, for the reason that to so inherit they must take by right of representation of their father, and that by section 1387 of the Civil Code the right given to illegitimates of succession to the estate of lineal or collateral kindred of their parents is expressly limited to the estates of their brothers and sisters.

The question of the rights of succession of a child legitimated by statute to succeed to his grandmother's estate is new in this state, and for that reason is one of more than ordinary interest. Section 1387, referred to above, reads as follows:

"Every illegitimate child is an heir of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; and in all cases is an heir of his mother; and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he does **not**

32 Cal. App.—19

represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral, unless, before his death, his parents shall have intermarried, and his father, after such marriage, acknowledges him as his child, or adopts him into his family; *in which case such child and all the legitimate children are considered brothers and sisters, and on the death of either of them, intestate, and without issue, the others inherit his estate, and are heirs, as hereinbefore provided, in like manner as if all the children had been legitimate; saving to the father and mother, respectively, their rights in the estates of all the children in like manner as if all had·been legitimate.*"

In the brief of appellants there is to be found an exhaustive and able analysis, clause by clause of this section, by which it is demonstrated beyond doubt that the part of the section which we have italicized gives only a limited right of succession by representation, to wit, the right to succeed to the estate of deceased brothers and sisters, and does not confer the right to succeed to the estate of a grandmother. And it is the contention of appellants that legitimated children come within the terms of this section of the code, and that their rights of succession are governed by it.

We cannot agree with the view that the scope of section 1387 extends to legitimated children. We are of the opinion that this section has nothing to do with the rights of children who, though born out of wedlock, have become legitimated by compliance with section 215 or section 230 of the Civil Code. Those two sections read respectively as follows:

"Sec. 215. A child born before wedlock becomes legitimate by the subsequent marriage of its parents."

"Sec. 230. The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this chapter do not apply to such an adoption."

We think it quite clear that compliance with the terms of either one of these sections makes a child born out of lawful ·wedlock legitimate; that, as stated in section 230, he is legitimate for all purposes, and that, as a legitimate child, his rights of inheritance are governed by section 1386 of the Civil

Code, which confers rights of inheritance upon legitimate children.

At common law a child born out of wedlock was said to be *filius nullius* and to have no heritable blood. These expressions are of course figurative, and meant no more than that certain legal disabilities were attached to his status, one of which was his lack of capacity to inherit from his father or his parents' kindred. There can be no doubt that the legislature could remove those disabilities. The right of inheritance of legitimate and illegitimate children alike is a creature of law, and can be changed by the legislature at any time and to any extent. When the law provides means for making legitimate a child born out of wedlock, it changes the status of that child, and in the absence of special provision to the contrary, he thenceforth comes within the provisions of the laws relating to legitimate children. Thereafter a child so legitimated is included in the designation "child" or "children" when those words refer to a child or children legitimately born; and he is no longer included in the designation "illegitimate child" when that term is used in a statute, unless it is obvious that such words are intended by the legislature to include one who, though now legitimate, was formerly illegitimate. We think these propositions are self-evident. Of what avail is it to have legitimated a child if he still labors under the disabilities of his former condition? If he has not acquired the rights by law given to, and become subject to the duties imposed upon, his new condition, there has been no change at all; for it is obvious that the fact that he was born out of wedlock has not been changed and never can be. If any stigma attaches to that condition it still remains, and all that the law can do—and all it seeks to do— is to remove the disabilities attached to the condition. We freely grant that the legislature can limit the extent to which the disabilities of an illegitimate child are removed; that although it has granted legitimacy in general terms, it can still perpetuate former disabilities or create new ones; so that, in a statute granting rights of succession to the property of intestates, a discrimination may still be made against persons legitimated by statute. It is the claim of appellants that this is in fact what has been done in section 1387 by that part of the section which we have italicized. A reading of that section without reference to its history lends much color to this

contention, but a consideration of that history will make it apparent that the section deals only with the rights of children born out of wedlock who have never been legitimated. Its provisions first appeared in the law of this state in a statute passed in 1850 (Stats. 1850, p. 219), where, as section 2 thereof, we find it almost word for word. At that time there was no method known to our law of legitimating a child born out of wedlock; and the provisions contained in said section 2—and which are relied upon by appellants as limiting the right of succession of legitimated children—had only as their effect to confer upon illegitimates the limited right of succession there given, and did not purport to change their condition of illegitimacy. They remained illegitimate, and received those limited rights of succession as such. This statute of 1850 remained in force until March 31, 1870, when it was repealed; but upon the adoption of the Civil Code, taking effect on January 1, 1873, we find section 2 of said statute reappearing almost word for word as section 1387 of said code. Being merely a re-enactment of an old statute it must, upon familiar principles, be given the same meaning and effect as it originally had. Upon its original enactment it merely conferred certain limited rights of inheritance upon illegitimates complying with certain conditions, and did not purport to make them legitimate or to remove their disabilities *in toto*. Simultaneously with section 1387 there appeared in the Civil Code, section 230, being itself a re-enactment of section 9 of an act of the legislature approved March 31, 1870. (Stats. 1869–70, p. 530.) Said section 9 had provided for the first time a method for making legitimate by law children born out of wedlock. Section 230 declares that compliance with its provisions makes the child who was theretofore illegitimate legitimate for all purposes. Being legitimate for all purposes it became in the eyes of the law a legitimate child, with all the rights conferred by law upon legitimate children, including that of inheritance under the provisions of section 1386 of that code. The legislation contained in section 9 of the act of March 31, 1870, and re-enacted as section 230 of the Civil Code, was a radical departure from existing law. It may be said to have inaugurated a new era in the rights which society accorded to children born out of wedlock. A note to the section (Civ. Code, Deering, 1915) states that it was based on Field's Draft, New York Civil Code, section 116.

(Stats. 1869–70, p. 530, sec. 9.) Speaking of it our code commissioners said: "This provision, like the rest, is new, but is so manifestly just, and the present state of the law is so unmerciful to innocent children, that it is presumed that no objection will be made to the change. . . . " At the session of the legislature following the adoption of the codes, section 215 of the Civil Code was enacted. It was but the incorporation into the code of a provision of law which had existed as section 8 of the act approved March 31, 1870, already mentioned. The terms of that section are set forth above; and it will be seen that it provided that the mere marriage of the parents of an illegitimate child legitimated him. It was now no longer necessary, as required by section 230, that the father publicly acknowledge him, receive him into his family, or otherwise treat him as a legitimate child. This is perhaps the most liberal of all enactments removing the disabilities of children born out of wedlock; but under the argument of appellants a child made legitimate by compliance with the requirements of this section has not even the rights of succession that the statute of 1850 (re-enacted as sec. 1387, Civ. Code) conferred upon illegitimates complying with its terms, for the mere marriage of the parents of the illegitimate was not sufficient to confer even those limited rights; there was the further requirement that the father acknowledge the child and adopt him into his family.

Nor, under the construction of the statutes concerning legitimacy contended for by appellants, would an illegitimate child legitimated by section 215 of the Civil Code have any right to succeed to the estate even of his father; for under that construction his rights of inheritance being exclusively governed by section 1387, it would be necessary that the father acknowledge in writing his paternity of the child—a condition not required by section 215. Thus we would have a case where a child made legitimate by statute is incapable of inheriting from his own father, much less from his father's kindred, although by the provisions of section 1388 of the Civil Code both the father and the father's kindred are given the right to succeed to his estate. If the construction of the law contended for by appellants were correct, we would have the anomalous condition that sixty or seventy years after the original enactment of section 1387 in 1850, and in spite of the increasingly liberal and humane tendency of legislation

in respect to illegitimate children, a child to-day, made legitimate by statute, has more restricted rights of succession than an illegitimate child in the year 1850.

It is suggested that sections 215 and 230 are mere statutes of status, and confer no rights of succession, and that those rights must be sought in the sections of the code dealing with succession. That is perfectly true; but the fallacy of appellants' position is that they ignore the changed status of the respondents, and seek to relegate them to section 1387, dealing with the rights of succession of illegitimates, and to exclude them from section 1386, which deals with the rights of legitimates.

If sections 230 and 1387 were concurrent and conflicting legislation, there would be some force in the contention that the rights of succession of a child legitimated by section 230 should be governed by section 1387; for it could be argued that as the same requirements are found in both sections, it was intended that although on the one hand compliance with them conferred legitimacy, yet when it came to the question of succession, such compliance did not put the illegitimate in the situation of a legitimate, but only had the limited effect stated in section 1387, and that their apparent conflict should be reconciled in that way. But the re-enactment of the provisions of section 1387 did not make them concurrent legislation with section 230. The rule in this regard is that ''Where there are two conflicting sections in a code or other compilation of statutes, that section prevails which is derived from a source which may be considered as the latest expression of the law-making power, without regard to the relative position of such sections in the code.'' (26 Am. & Eng. Ency. of Law, 735, citing *Lamar* v. *Allen*, 108 Ga. 158, [33 S. E. 958].) As we have seen, the provisions of section 230 were later legislation than that contained in section 1387; and the latter section means no more and can be given no other construction than it theretofore had, when its effect was solely to give certain restricted rights of inheritance to illegitimates as such. It is obvious that there is no conflict between such legislation and a subsequent law conferring legitimacy, even though incidentally the same conditions are made sufficient to confer legitimacy which formerly only gave restricted rights of inheritance.

Moreover, the proposition that section 1387 is not to be regarded as a limitation upon section 230 has been directly decided by the supreme court of this state in the case of *In re Jessup*, 81 Cal. 408 (447), [6 L. R. A. 594, 21 Pac. 976, 22 Pac. 742, 1028], wherein it is said: "We cannot agree to the proposition that the provision contained in section 1387 of the Civil Code, that 'every illegitimate child is an heir of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child,' is a limitation upon section 230, and excludes an illegitimate child, adopted as provided in the latter section, from the inheritance. If so, section 230 would be deprived of much of its force. . . . Section 230 expressly provides that upon the adoption of a child as therein provided, it shall 'be deemed to be legitimate for all purposes.' "

That the words "children" and "lawful issue" when found in statutes of succession are not to be confined to their strict common-law signification, was decided by our supreme court in the *Estate of Wardell*, 57 Cal. 484, 491, where it is said: "If courts were now to restrict the word to its common-law meaning, all children born of an unlawful marriage, all children by adoption or acknowledgment of their father, and all children whose parents intermarried subsequent to their birth, would be excluded from rights of inheritance or succession. But by statute, the offspring of marriages null in law (Civ. Code, sec. 84), children born out of wedlock whose parents subsequently intermarried (Id., sec. 215), and children by acknowledgment or adoption of their father (Id., secs. 224, 227, 228, and 230), are all legitimate. These, although incapacitated at common law from succeeding to any rights of their father, are regarded for all purposes as legitimate from the time of their birth. . . . Hence the term 'children' as used in section 1307 of the law of succession must relate to status, not to origin—to the capacity to inherit, not to the legality of the relations which may have existed between those of whom they may have been begotten. The word has, therefore, a statutory and not a common-law meaning; and its meaning includes all children upon whom has been conferred by law the capacity of inheritance."

Finally, the contention is made that the respondents do not come within the terms either of section 215 or section 230, for the reason that these sections, as the appellants claim, refer

only to minor children. It is true that in the *Estate of Pico*, 56 Cal. 413, section 230 was thus limited in its effect; but the reason it was so limited, as is apparent from the opinion in that case, was that the section comprises part of a chapter of the code on adoption, and the language of the section is that the illegitimate child, by the acts therein enumerated, is "adopted" as a legitimate child, and thereby becomes legitimate. As the provisions of the code relating to adoption apply only to minors, the court concluded that the section could not apply to one who had attained his majority because he could not be adopted. But section 215 is not included in the chapter on adoption; and the reasoning in the *Estate of Pico, supra,* has no application to it. Its language makes no distinction between minors and adults, and there is nothing in the reason or necessity of the enactment which would warrant this court in confining its application to children who had not attained their majority.

It results from what we have said that the respondents, having been legitimated by the subsequent marriage of their parents, come within the terms of section 1386 of the Civil Code, and that within the meaning of that section they are "lawful issue" and take by representation. The portion of the judgment appealed from is therefore affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 8, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 7, 1917, and the following opinion then rendered thereon:

THE COURT.—We concur in the conclusion of the district court of appeal as to the capacity of the respondents to inherit from Tobe Funkenstein, through their deceased father, Newman Wolf, but in denying the application for a hearing in this court we deem it proper to say that we are not entirely in accord with all the reasoning by which that conclusion is reached by that court. We cannot agree either that section 1387 of the Civil Code has no application to children situated as are the respondents, or that, fairly construed,

that section excludes respondents from taking a share of the estate of the mother of their deceased father.   To our minds the term ''illegitimate child'' as used in both sections 1387 and 1388 includes illegitimate children who have been legitimated, and in so far as they lay down rules of succession contrary to the general rules found in section 1386 of the Civil Code, must prevail as to any child born illegitimate.   (See *Estate of De Cigaran,* 150 Cal. 682, [89 Pac. 833].)   But, in our opinion, section 1387 should be construed as not providing any rule contrary to section 1386, in so far as children situated as respondents are concerned.   When the section expressly provides, as it does, that an illegitimate child ''does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral, unless, before his death, his parents shall have intermarried, and his father, after such marriage, acknowledges him as his child, or adopts him into his family,'' it by necessary implication recognizes the right of one whose parents intermarry and whose father, after such marriage, acknowledges him as his child or adopts him into his family, to represent his father or mother by inheriting from the kindred of either, either lineal or collateral, just as a legitimate child would inherit under section 1386 of the Civil Code.   We do not believe that the succeeding clause, commencing with the words, ''in which case such child and all the legitimate children are considered brothers and sisters,'' etc., should be construed as a limitation on this right.   This clause was manifestly intended to remove all doubt as to the right of brothers and sisters to inherit from each other where one of them is legitimated as provided in the preceding part of the section, and gives the legitimated child a right of direct inheritance from brothers and sisters, in addition to the right of inheritance by representation conferred by the preceding clause.   The result is the same as that reached by Mr. Justice Kerrigan in the opinion of the district court of appeal, viz., that section 1386 does apply in this case, and that under its provisions respondents are, in view of the facts, heirs of Tobe Funkenstein.

The application for a hearing in this court is denied.

Mr. Justice Melvin and Mr. Justice Lawlor dissented from the order denying a hearing in this court.